DONALD FELTCH & another[1] vs. GENERAL RENTAL CO.
& others.[2]

Middlesex. January 8, 1981. — May 8, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

Negligence, Comparative, Causing loss of consortium. Husband and
Wife, Consortium. Damages, Loss of consortium. Practice, Civil,
Directed verdict. Motor Vehicle, Ownership, Registration.

A plaintiff's recovery for loss of consortium is not to be reduced by the
proportion of negligence attributable to the plaintiff's spouse under the
comparative negligence statute. [606-610]
In an action arising out of an automobile accident it was error to direct
a verdict for one of the defendants, the lessor of the automobile, in
view of a stipulation that the lessor was the registered owner of the
vehicle involved in the accident; however, where the lessor in its
answer denied the plaintiffs' allegations that the driver was its agent or
servant and where there was evidence at trial that the lessor had leased
the automobile to another defendant, the driver's employer, this court
refused to order entry of judgment against the lessor. [610-612]
Where in a negligence action counsel for a defendant in whose favor the
judge had erroneously directed a verdict argued the issue of damages
to the jury on behalf of the other two defendants, this court limited its
order for a new trial to the issue of the defendant's liability. [612]
A notice of appeal from an order denying a motion for judgment not-
withstanding the verdict, which was not filed within thirty days from
the making of the order, was not timely under Mass. R. A. P. 4 (a),
even though it was filed within thirty days from the entry of the order.
[612-614]

CIVIL ACTION commenced in the Superior Court on May
31, 1977.

[1] Anne Feltch, the wife of Donald Feltch.

[2] George Mann & Co., Inc., and Robert Randall. Dow Chemical
Company was originally named as a defendant, but prior to trial the com-
plaint against Dow Chemical was dismissed with prejudice.

The case was tried before *Flaksman, J.*, a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Thayer Fremont-Smith (Paul M. Stein* with him) for the plaintiffs.

*Walter H. McLaughlin, Jr. (Leonard A. Lucas* with him) for the defendants.

ABRAMS, J.   The plaintiff Donald Feltch was injured when the defendant Robert Randall drove a truck into an electric cable that Feltch and a two-man crew were installing.[3]   As a result Feltch suffered a fractured hip and back injuries, was hospitalized for several weeks, and was disabled for many months.   He also became depressed, irritable with his wife, and sexually impotent.

Donald Feltch claimed damages for his injuries from the driver of the truck, Robert Randall, Randall's employer, George Mann & Co., Inc., and the lessor of the truck, General Rental Co.   Anne Feltch, the wife of Donald, claimed compensation for her loss of consortium.   The jury returned verdicts for both plaintiffs against the defendants Robert Randall and George Mann & Co., Inc.   Over the plaintiffs' objections, the judge ordered directed verdicts for General Rental Co.   In answer to special interrogatories, the jury found that Donald Feltch's damages totalled $312,000, that Donald Feltch was 37.5 per cent negligent, and that the defendant Robert Randall was 62.5 per cent negligent.   Accordingly, as the judge instructed, the jury returned verdicts in favor of Donald Feltch in the reduced

---

[3] Feltch and his crew were installing a cable which ran between a house and a pole across the street from the house.   Feltch had stopped traffic in both directions as the cable was stretched across the street.   When the crew raised one end of the cable so that it no longer blocked the southbound lane of traffic, Feltch directed that lane to proceed.   The defendant Robert Randall, who was waiting in the northbound lane, proceeded to drive his truck forward.   The cable snagged on the top of his truck.   Feltch, who was holding one end of the cable, was pulled thirty feet into the air and thrown to the ground.

amount of $195,000. The jury also returned a verdict for Anne Feltch for $73,125.

After trial both parties filed motions. Anne Feltch moved to amend the verdict on her claim for loss of consortium contending that the jury arrived at the $73,125 verdict by determining that she was entitled to $117,000 for loss of consortium, and then by reducing that amount by 37.5 per cent, the degree of her husband's negligence. The judge denied this motion, but stated that he accepted, "for purposes of this order, that the jury reduced a judgment of $117,000.00 by 37.5%, the degree of her husband's comparative negligence, to reach the damages of $73,125.00." At the posttrial hearing, counsel for the plaintiffs asked the judge if he would explain whether he reached that decision based on "the computation sheet that the jury had or whether your Honor has spoken to the foreman of the jury." The judge responded, "I went through some mathematics. That is as far as I am going." At this hearing, the defendants did not dispute the plaintiff Anne Feltch's claim that the jury's calculations took into consideration her husband's comparative negligence and did not object to the judge's failure to set forth his reasons for his conclusion. Trial counsel for the defendants simply registered dissatisfaction with the jury verdicts for the plaintiffs, and asked for a new trial based on various objections to evidentiary rulings. The judge declined to amend the jury verdict on the consortium claim and the plaintiffs duly appealed.

The plaintiffs also appealed from the judge's granting of motions for directed verdicts in favor of General Rental Co. The defendants filed a motion for judgment notwithstanding the verdict, or for a new trial, which was denied by the judge. The defendants filed a claim of appeal. We hold that the wife's loss of consortium award should not have been reduced by the comparative negligence of her husband, and therefore, that verdicts on those counts should be corrected upward by 37.5 per cent, that it was error to direct verdicts in favor of General Rental Co., and that there must be a new trial on the issue of the liability of

General Rental Co. Lastly, we conclude that the defendants' trial counsel[4] failed to file a timely notice of appeal and therefore the defendants' appeal must be dismissed. Mass. R. A. P. 4 (a), as amended, 378 Mass. 924 (1979).

*Comparative negligence and the loss of consortium claim.* The plaintiffs requested an instruction[5] which raised the issue whether a plaintiff's recovery in a loss of consortium case should be reduced by the proportion of negligence attributable to the plaintiff's spouse. We left this issue open in *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 529 n.29 (1980). See *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 157 n.14 (1973). The judge did not grant the request, and the plaintiffs duly objected, claiming that any negligence on the part of Donald Feltch should not be imputed to his wife.

The defendants, on the other hand, argue that the loss of consortium claim is derived from the initial injury to the other spouse, and hence is subject to all of the defenses which can be asserted against the injured spouse, including that spouse's comparative negligence. Although this view has been accepted by a number of courts (see *Nelson* v. *Busby*, 246 Ark. 247, 255 [1969]; *White* v. *Lunder*, 66 Wis. 2d 563, 575 [1975]; see also *Eggert* v. *Working*, 599 P.2d 1389 [Alaska 1979]), we conclude that the plaintiff Anne Feltch's requested instruction correctly states the law of Massachusetts and should have been granted.

At issue is whether a claim for loss of consortium should be viewed as a derivative or an independent claim. The courts that have characterized the consortium action as derivative have viewed the husband and wife as a single unit or have viewed the cause of action for loss of consortium as arising from the physical injury to one spouse. See *Eggert* v. *Working, supra* at 1391; *Nelson* v. *Busby, supra* at 255; *White* v. *Lunder, supra* at 574. The view that a con-

---

[4] Appellate counsel was not counsel for the defendants at the trial.

[5] The plaintiffs requested an instruction that "the contributory negligence of the plaintiff, Donald Feltch, if any, should have no bearing upon the verdict of the jury as it relates to Anne Feltch."

sortium claim is "derivative" has been rejected by the commentators, see 2 F. Harper & F. James, Torts § 23.8 (1956); W. Prosser, Torts § 125, at 892-893 (4th ed. 1971). Those courts which view the action as independent have analyzed the differences in the damages sustained by each spouse and have concluded that these differences create distinct causes of action, despite the fact that the consortium action and the negligence action arise out of injuries to one spouse. *Lantis* v. *Condon*, 95 Cal. App. 3d 152, 156-158 (1979). *Macon* v. *Seaward Constr. Co.*, 555 F.2d 1, 2 (1st Cir. 1977).

Our prior cases indicate that a claim for loss of consortium is independent of the damage claim of the injured spouse.[6] In *Duffee* v. *Boston Elevated Ry.*, 191 Mass. 563, 564 (1906), we observed that although a husband's claim for loss of consortium was based on the same set of facts as the wife's action for personal injuries, each spouse "is enforcing an independent right." Therefore, we said that the fact that the wife had been previously defeated in her negligence action against the same defendant was irrelevant to the husband's action and could not be used to support a plea of res judicata. See *Diaz* v. *Eli Lilly & Co.*, *supra* at 157. See also *Erickson* v. *Buckley*, 230 Mass. 467, 470-471 (1918) (wife's right to recover for personal injuries is "independent" of the husband's right to recover for loss of wife's services and society); *Whittlesey* v. *Miller*, 572 S.W.2d 665, 667 (Tex. 1978); *Schwartz* v. *Milwaukee*, 54 Wis. 2d 286, 293 (1972) (cause of action for loss of consortium "is a separate

---

[6] The judge below stated that *Thibeault* v. *Poole*, 283 Mass. 480 (1933), stands for the proposition that loss of consortium is a "derivative" claim. In that case, the husband instituted an action to recover medical expenses arising from the defendant's negligent injury to his wife. The judge held that the husband could not recover medical expenses where the negligence of the wife contributed to her injuries.

However, in *Thibeault*, the husband sought recovery not for his own loss of consortium, but for the medical expenses of treating his wife's injuries. We believe there is a major difference between these two causes of action. Unlike loss of consortium, the expense of medical care does not constitute an independent tort against the uninjured spouse, but merely represents one form of damages which flow from the other spouse's injury.

cause of action which never belonged to the other spouse"); cf. *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 146 (1976) ("the underlying purpose of such action is to compensate for the loss of the companionship, affection and sexual enjoyment of one's spouse"); *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 167-168 (1973) (a claim for loss of consortium arises "from the personal injury of the other spouse caused by the negligence of a third person"). We think the appropriate analysis is to examine the nature of the claims, not the source of the injuries. If the consortium claim is so analyzed, it is clear that it is a claim for a loss which "never did belong to the injured party," 2 F. Harper & F. James, Torts § 23.8 (1956), just as the suit for physical injuries never belonged to the noninjured spouse. For these reasons we conclude that the consortium claim is independent.

Moreover, to reduce Anne Feltch's claim for loss of consortium by the amount Donald Feltch was found to be negligent simply imputes his negligence to his wife. Generally, misconduct cannot be imputed from one family member to another. See, e.g., *Feaver* v. *Railway Express Agency, Inc.*, 324 Mass. 165, 168 (1949) (contributory negligence of wife is not imputed to husband or children); *Anthony* v. *Boston & Me. R.R.*, 276 Mass. 392, 397 (1931) (wife "entitled to recover [for property damage] even if negligence of her husband concurred to produce such damage"). See generally W. Prosser, Torts § 74, at 489-490 (4th ed. 1971): "The wife is regarded as a separate individual, whose negligence is no more to be attributed to the husband, or his to her, than in the case of any other person." We see no reason to follow a different policy with respect to consortium.

The language of the Massachusetts comparative negligence statute, G. L. c. 231, § 85, also suggests that a spouse's negligence is not to be imputed to the other spouse. The statute provides that, in determining by what amount a negligent plaintiff's damages are to be diminished, "the negligence of each plaintiff shall be compared to the total negligence of all persons against whom recovery is sought." G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, § 1.

Anne Feltch was not found to be negligent, and the statute does not indicate that her recovery may be reduced by the degree of her husband's negligence. See *Macon* v. *Seaward Constr. Co.*, 555 F.2d 1, 2 (1st Cir. 1977) ("the statute provides only that a plaintiff's recovery is to be reduced by his or her own degree of fault, and in the instant case the wife was not at fault"). Any change in the legislative policy as expressed in the statute is for the Legislature. We are not free to fashion remedies not sanctioned by the words of the statute nor by the policies underlying the statute. See, e.g., *Northwest Airlines, Inc.* v. *Transport Workers Union of America*, 451 U.S. 77 (1981).

The defendants urge us to allow defendants in consortium cases to counterclaim against the negligent spouse, in order to reduce the defendant's liability on the loss of consortium award by the degree of the injured plaintiff's negligence. We decline to impute the negligence of the injured spouse to the other spouse, and therefore we will not sanction a procedure that does so indirectly.

Moreover, "the underlying purpose of such action [loss of consortium] is to compensate for the loss of the companionship, affection and sexual enjoyment of one's spouse." *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 146 (1976). See *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 160 (1973) (the claim for loss of consortium involves the "loss of companionship and affection, of sexual enjoyment and the prospects of [parenthood]"). In essence, the defendants' suggested procedure of permitting a counterclaim allows the plaintiff with a consortium claim to sue the other spouse for injuries which arise out of the "privileged or consensual aspects of married life," *Brown* v. *Brown*, 381 Mass. 231, 233 (1980), quoting from *Merenoff* v. *Merenoff*, 76 N.J. 535, 557 (1978). We conclude that in a suit for loss of consortium, the injured spouse may not be joined as a defendant. "[T]here still remain situations wherein, as a matter of law or fact, claims for personal injuries between married persons will not justify a recovery of damages." *Id.*

The defendants suggest that if we determine that Anne Feltch's award for loss of consortium is not to be reduced by

the negligence of her husband, we should return this issue to the Superior Court for a determination whether the jury, in fact, did reduce her award by 37.5 per cent. The short answer to this contention is that the judge held a hearing on this issue and the defendants had the opportunity to present evidence or affidavits on this issue. Since they failed to do so, they are not entitled to a second hearing. The evidence produced by the plaintiffs at the hearing indicated that the jury had determined Anne Feltch's damages to be $117,000, and had reduced the consortium verdict by 37.5 per cent.[7] Thus, the judge should have allowed the plaintiffs' motion to correct the verdict. We conclude that there should be a correction of the consortium verdict upward to $117,000 without a further hearing.

*The directed verdicts in favor of General Rental Co.* The plaintiffs claim that it was error for the judge to direct verdicts in favor of General Rental Co. at the close of the evidence, in view of a stipulation[8] that General Rental Co. was the registered owner of the vehicle involved in the accident. We agree. General Laws c. 231, § 85A, provides that in all cases to recover damages arising out of an automobile accident, "evidence that at the time of such accident or collision [the automobile] was registered in the name of the defendant as owner shall be prima facie evidence that it

---

[7] On appeal, the defendants do not suggest that the $73,125 must be reduced by 37.5 per cent, and throughout their brief they implicitly recognize that the jury, in fact, reduced Anne Feltch's award by the degree of her husband's negligence.

[8] The defendants claim that the plaintiffs' failure to introduce a certified copy of the registration of the truck prevents the plaintiffs from relying on G. L. c. 231, § 85A, and in essence frees the defendants from their stipulation that General Rental Co. was the registered owner of the truck. "It [is] not necessary that a certified copy of the registration be offered in evidence." *Pochi* v. *Brett*, 319 Mass. 197, 204 (1946). The record does not disclose any basis for relieving General Rental Co. from its stipulation. "[A] party may not disregard a stipulation given by him, nor can he revoke or escape from it at his will." *Kalika* v. *Munro*, 323 Mass. 542, 543 (1948). See *Wyness* v. *Crowley*, 292 Mass. 461, 464 (1935). See also *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 599 (1952) ("A party is . . . bound by an agreement made in open court and acted on by the judge").

was then being operated by and under the control of a person for whose conduct the defendant was legally responsible, and absence of such responsibility shall be an affirmative defence to be set up in the answer and proved by the defendant." See *Nugent* v. *Classic Car Corp.*, 379 Mass. 913 (1979).

The plaintiffs also claim that we should order that judgments be entered against General Rental Co. in the same amounts as the damages found by the jury against the other two defendants. The plaintiffs contend that the stipulation that General Rental Co. was the registered owner of the truck established a prima facie case under G. L. c. 231, § 85A. They claim that General Rental Co. assumed the affirmative burden of alleging and proving that it relinquished its statutory legal responsibility for the use of the truck, and exercised no control over the operation or the operator thereof. Since General Rental Co. failed to do that, the plaintiffs argue, the jury had no choice but to find General Rental Co. liable. See *Commonwealth* v. *Pauley*, 368 Mass. 286, 290-291 & n.6 (1975); *Pahigian* v. *Manufacturers' Life Ins. Co.*, 349 Mass. 78, 85 (1965); *Cook* v. *Farm Servs. Stores, Inc.*, 301 Mass. 564, 566 (1938); W.B. Leach & P.J. Liacos, Massachusetts Evidence 52-62 (4th ed. 1967). We disagree. "Rarely can a verdict be directed in favor of the party having the burden of proof." *Pahigian* v. *Manufacturers' Life Ins. Co.*, *supra* at 86.

The answer of General Rental Co. denied the plaintiffs' allegations that the driver was its agent or servant and that he was subject to the control of General Rental Co. At trial, evidence was elicited that General Rental Co. had leased[9] the truck to George Mann & Co., Inc., and that the driver was employed by George Mann & Co., Inc. Those facts are sufficient contradiction to require jury consideration of whether the truck was "being operated by . . . a person for whose conduct the defendant [General Rental] was legally responsible." G. L. c. 231, § 85A. See *Nugent* v. *Classic Car Corp.*, *supra*. The better procedure "in a

---

[9] The lease is not in the record.

case in which it is a close question whether the standard for granting a directed verdict is met is to allow the matter to go to the jury. If the judge then decides that the jury's verdict cannot stand, a motion for judgment notwithstanding the verdict may be allowed." *Smith* v. *Ariens Co.*, 375 Mass. 620, 627 (1978). In this case, the failure of the judge to follow our established procedure requires a second trial.

The question is whether the second trial may be limited to the issue of the liability of General Rental Co. We conclude that the new trial should be so limited because General Rental Co. through its counsel had the opportunity to participate fully on all aspects of the issue of damages. Counsel for General Rental Co. argued the issue of damages to the jury, albeit on behalf of the other two defendants.[10] The record does not reveal any difference between General Rental Co. and the other defendants on the issue of damages, and on this record the issue of liability under G. L. c. 231, § 85A, may be tried separately "without such confusion or uncertainty as would amount to a denial of a fair trial," see *Soils* v. *Oilfields Trucking Co.*, 90 Cal. App. 3d 349, 355 (1979). See generally Annot., 34 A.L.R.2d 988 (1954).

*The defendants' cross appeal.*[11] Judgments on the verdicts of the jury were entered on March 28, 1980. After trial the defendants moved for judgment notwithstanding the verdict, or for a new trial. These motions were denied by an order dated May 30, 1980, and entered on June 3, 1980. The defendants filed their notice of appeal on July 3, 1980. The plaintiffs claim that the defendants' notice of appeal was not timely filed, and that, in the absence of any

---

[10] In this respect, this case differs from *Nugent* v. *Classic Car Corp.*, 379 Mass. 913 (1979), in which we granted a new trial on both the issue of liability and on damages to a defendant in favor of whom a directed verdict had mistakenly been granted. In that case, the defendant had not had an opportunity to participate fully in the trial because, as the result of the directed verdicts in its favor, it did not present any argument to the jury.

[11] At oral argument the defendants' appellate counsel waived all their claims of error except for three evidentiary issues. Since there has to be a new trial on the issue of the liability of General Rental Co., we add that we have examined those three issues and find them to be without merit.

claim by the defendants that the delay amounted to "excus-able neglect," we should dismiss the appeal.

In construing Mass. R. A. P. 4 (a), as amended, 378 Mass. 924 (1979), we look to the construction of the parallel Federal rule. See *Goldstein* v. *Barron*, 382 Mass. 181, 186 (1980). See also *Rollins Environmental Servs., Inc.* v. *Superior Court*, 368 Mass. 174 (1975). After the denial of a motion for judgment notwithstanding the verdict, or for a new trial, "the full time for appeal fixed by this rule shall commence to run and shall be computed from the making of . . . the . . . [order]." Mass. R. A. P. 4 (a).

Counsel for the defendants concedes that the notice of ap-peal was not filed within thirty days of the making of the order as required by the plaintiffs' reading of the second par. of Mass. R. A. P. 4 (a). The defendants claim, however, that rule 4 (a) should be read *as permitting a notice of appeal to be filed within thirty days from the date of entry of the denial* of the motion for judgment notwithstanding the verdict. The short answer to this claim is that the rule is not ambiguous and clearly does not support the defendants' construction of the rule. "The purpose of [rule 4 (a)] is clear: It is 'to set a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands." *Browder* v. *Director, Dep't of Corrections of Ill.*, 434 U.S. 257, 264 (1978) (construing Fed. R. A. P. 4 [a]). Untimely notice of appeal still may not bar an appeal if the delayed filing of a notice of appeal is excusable. See Mass. R. A. P. 4 (c), as amended, 378 Mass. 924 (1979).[12] Excusable neglect re-

---

[12] Massachusetts R. A. P. 4 (c), as amended, provides: "*Extension of Time for Filing Notice of Appeal.* Upon a showing of excusable neglect, the lower court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule. Such an extension may be granted before or after the time otherwise prescribed by this rule has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the lower court shall deem ap-propriate."

quires "circumstances that are unique or extraordinary." *Spound* v. *Mohasco Indus., Inc.*, 534 F.2d 404, 411 (1st Cir.), quoting from *Maryland Cas. Co.* v. *Conner*, 382 F.2d 13, 17 (1967), cert. denied, 429 U.S. 886 (1976). See, e.g., *Selph* v. *Council of Los Angeles*, 593 F.2d 881, 882-883 (9th Cir. 1979); *Schroeder* v. *Federal Nat'l Mortgage Ass'n*, 574 F.2d 1117 (1st Cir. 1978); *Brainerd* v. *Beal*, 498 F.2d 901, 902-903 (7th Cir.), cert. denied, 419 U.S. 1069 (1974); *Flint* v. *Howard*, 464 F.2d 1084 (1st Cir. 1972); *Pasquale* v. *Finch*, 418 F.2d 627 (1st Cir. 1969); *Marshall* v. *Lancarte*, 485 F. Supp. 251, 254 (N.D. Tex. 1980).

From the cases it is clear that excusable neglect "is not meant to cover the usual excuse that the lawyer is too busy, which can be used, perhaps truthfully, in almost every case. . . . It is [meant] to take care of emergency situations only." Stern, Changes in the Federal Appellate Rules, 41 F.R.D. 297, 299 (1967). "A flat mistake of counsel about the meaning of a statute or rule may not justify relief: relief is not extended 'to cover any kind of garden-variety oversight.'" *Goldstein* v. *Barron*, 382 Mass. 181, 186 (1980), quoting from *Pasquale* v. *Finch*, 418 F.2d 627, 630 (1st Cir. 1969). Since the record does not disclose any basis for concluding that the defendants' neglect to file their notice of appeal timely was excusable, the failure of the trial counsel to file a timely notice of appeal is fatal to the defendants' cross appeal.

For the reasons set forth above, we hold that the verdict for Anne Feltch should be increased to $117,000; that there must be a new trial on the issue of the liability of General Rental Co.; and that the defendants' cross appeal should be dismissed.

*So ordered.*