SHARON L. COOK, administratrix,[1] & another[2] *vs.* THE
HANOVER INSURANCE COMPANY.

No. 90-P-977.

Essex. January 13, 1992. - May 22, 1992.

Present: ARMSTRONG, SMITH, & GREENBERG, JJ.

*Negligence*, Causing loss of consortium. *Husband and Wife*, Consortium.
*Actionable Tort. Statute*, Construction.

A surviving spouse may not recover, under the wrongful death statute,
G. L. c. 229, § 2, for loss of consortium, where the death was caused
solely by the negligence of the deceased. [556-560]

CIVIL ACTION commenced in the Superior Court Department on December 7, 1988.

The case was heard by *John T. Ronan*, J., on a motion for summary judgment.

*William H. Sheehan, III*, for the plaintiffs.

*John D. Boyle* for the defendant.

GREENBERG, J. Antonio Magazzu died on January 19, 1987, eight days after he lost control of the automobile he was driving on Soldiers Field Road in the Allston section of Boston and it plunged into the Charles River. It is uncontroverted that Antonio's negligent operation of the vehicle was entirely responsible for the fatal accident.[3] The deceased's

---

[1] De bonis non of the estate of Antonio Magazzu.

[2] Emily F. Magazzu.

[3] After judgment was entered, the judge approved the parties' "Stipulation of Facts," which included a stipulation that Antonio was the only negligent party. We view the stipulation, in addition to the pleadings, as the entire record that was before the judge. See *Renda* v. *Gouchberg*, 4 Mass. App. Ct. 786 (1976). While we note that the parties failed to request approval from the judge for the stipulation within the thirty-day period (after the notice of appeal had been filed) prescribed by Mass.R.A.P 8(d), 378

wife, Emily F. Magazzu, brought this action[4] in the Superior Court and sought a judgment declaring that her claim for the loss of her husband's consortium is a legally cognizable cause of action.[5] After the complaint was amended to include, as a party plaintiff, Sharon L. Cook, the administratrix de bonis non of Antonio's estate, a judge of the Superior Court allowed the defendant's motion for summary judgment. The question before us is whether the wrongful death statute, G. L. c. 229, § 2, permits recovery for loss of consortium from a deceased spouse's insurer when the death was caused solely by the deceased's negligence, a matter of first impression. We hold that it does not and therefore we affirm.

The relevant portion of that statute reads: "A person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person *under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted* . . . shall be liable in damages . . . including [the value of the deceased's] . . . society, companionship, [and] comfort . . . " (emphasis added). G. L. c. 229, § 2, as appearing in St. 1973, c. 699, § 1. While it is undisputed that Antonio would have been precluded from recovering in tort had he survived, the plaintiffs argue that the statutory language, "under such circumstances that the deceased could have recovered damages for personal injuries if his death had

Mass. 934 (1979), this oversight does not preclude us, in the circumstances, from reaching the substantive issues raised by the appeal.

[4]Apparently Emily has brought a separate action in the Superior Court pursuant to G. L. c. 229, § 2, which has been stayed pending this appeal.

[5]The vehicle was owned by Emily and insured by the defendant. The relevant coverage included bodily injury coverage up to $25,000 per person/$50,000 per accident and underinsured coverage up to $25,000 per person/$50,000 per accident. The deceased was listed on the policy as a household member. By way of settlement with the defendant prior to the commencement of this action, Emily, in her capacity as administratrix of Antonio's estate, received $2,000 in personal injury protection benefits and $5,000 in medical benefits for his injuries. The couple's minor son, Mark Magazzu, also died from injuries he sustained in the accident. In her capacity as administratrix of Mark's estate, Emily received a total of $50,000 from the defendant. The defendant refused to honor her consortium claim under the policy.

not resulted," applies only when the death is caused by wilful, wanton, or reckless conduct and does not apply here, where the death was caused by merely negligent conduct. By negative implication, they assert, the statute allows the estate, on behalf of the surviving spouse, to recover from *any* negligent person responsible for the deceased's death, even though the deceased, had he survived, could not have recovered.

The plaintiffs also contend that their construction of the statute is supported by the common law, and that their cause of action is the logical extension of the Supreme Judicial Court's decisions in *Lewis* v. *Lewis*, 370 Mass. 619, 629-630 (1976) (abolishing the common law rule of interspousal immunity), and *Feltch* v. *General Rental Co.*, 383 Mass. 603, 606-610 (1981) (holding that a spouse's loss of consortium claim is an independent claim and therefore should not be reduced by the degree of the injured spouse's negligence). We subsequently held that *Feltch* v. *General Rental Co.*, *supra*, permitted recovery for a spouse's loss of consortium, even though the injured spouse's negligence claim was barred under the strictures of the comparative negligence statute. See *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 270-272 (1986). The plaintiffs assert that the absence of a negligent third party in this case is a meaningless factual distinction from *Feltch* v. *General Rental Co.*, *supra*, and that the holding in that case compels the conclusion that Antonio's wholly negligent conduct is not a bar to a recovery for his wife's loss of consortium.

We start with the proposition that the present action is not the type of claim contemplated by the court in *Lewis* v. *Lewis*, *supra*. While the plaintiffs correctly point out that *Lewis* v. *Lewis*, *supra*, itself did not involve a claim against a negligent third party, the underlying action there was for personal injuries, not loss of consortium. Moreover, we are reminded that, while *Lewis* v. *Lewis*, *supra*, represented a fundamental change in tort law principles, the Supreme Judicial Court carefully limited its holding to claims arising out of motor vehicle accidents against negligent third parties and

left the scope of the rule to be determined in future cases. *Lewis* v. *Lewis, supra* at 630. See also *Brown* v. *Brown,* 381 Mass. 231 (1980). Neither *Morgan* v. *Lalumiere, supra,* nor *Feltch* v. *General Rental Co., supra,* involved loss of consortium claims against spouses.

Interspousal tort immunity in the context of loss of consortium, moreover, has not been abrogated in Massachusetts. See *Feltch* v. *General Rental Co., supra* at 609 ("in a suit for loss of consortium, the injured spouse may not be joined as a defendant"); *Mouradian* v. *General Elec. Co.,* 23 Mass. App. Ct. 538, 544 (1987). See also *Brown* v. *Brown, supra* at 233 (immunity should be maintained if tortious conduct "trench[es] remotely upon the privileged or consensual aspects of married life" [citation omitted]).

We are not aware of a case in any jurisdiction which has allowed one spouse to sue the other for loss of consortium. Since "[a spouse's] interest in consortium is a right to such services as [the injured spouse] *voluntarily* provides . . . [an injured spouse] cannot be held liable for . . . negligently . . . denying [the other spouse] consortium (emphasis added)." *Plain* v. *Plain,* 307 Minn. 399, 401-402 (1976). Accord *McIntosh* v. *Barr,* 397 N.W. 2d 516, 517 (Iowa 1986) ("We believe there can be no independent claim for loss of consortium by one spouse against the other, because no actionable duty is breached"). Compare and contrast *Lantis* v. *Condon,* 95 Cal. App. 3d 152, 159 (1979) (reversing judge's reduction of jury award in consortium case by percentage amount of spouse's contributory negligence) with *Feltch* v. *General Rental Co., supra* at 609 (dismissing counterclaim of third party liable for loss of consortium against negligent injured spouse).

One commentator, who in all likelihood was inspired by what we have called "the potential for an unfair result in an extreme case[,]" *Morgan* v. *Lalumiere, supra* at 272, under the *Feltch* v. *General Rental Co.,* holding, has argued for the abrogation of interspousal tort immunity in the loss of consortium context. See Note, Loss of Consortium, Contributory Negligence, and Contribution: An Old Problem and a New

Solution, 24 B.C.L.Rev. 403, 432-433 (1983). Abrogation would serve to correct the unfairness of forcing the minimally negligent third party to pay the entire loss of consortium judgment and would allow the third party to pursue contribution from the negligent injured spouse. Recognizing that, in theory, abrogation would permit one to sue a spouse for loss of consortium, this same commentator has nevertheless concluded that "[t]here must be a limit imposed . . . where the consortium spouse attempts to sue the injured spouse who was one hundred percent negligent." *Id.* at 433. See also *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 167-168 (1973) ("a [spouse's] claim for loss of consortium . . . arise[s] from personal injury of the other spouse caused by negligence of a third person"). We conclude that Massachusetts law does not recognize the plaintiffs' alleged cause of action.

Our conclusion is not altered because the language of G. L. c. 229, § 2, appears to stand in conflict. We agree with the plaintiffs that, according to traditional principles of statutory interpretation, the proviso of subsection (2)[6] modifies only the last antecedent, the wilful and wanton conduct. See *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 231 (1982). Furthermore, it is well settled that the wrongful death statute is procedural in nature, whereas the right to recover is anchored in the common law. *Gaudette* v. *Webb*, 362 Mass. 60, 71 (1972). See also *Hallet* v. *Wrentham*, 398 Mass. 550, 555 (1986). We, of course, realize that the Legislature could create a substantive right to sue one's spouse for loss of consortium, and it might be argued that that is precisely what the Legislature intended by enacting the modern version of G. L. c. 229, § 2, as amended by St. 1973, c. 699, § 1. But the first case diminishing the common law bar of interspousal tort immunity in Massachusetts was not decided until 1976, see *Lewis* v. *Lewis*, *supra*, three years after the relevant language of the wrongful death statute was enacted, and we believe that the Legislature did not implic-

---

[6]That is, "under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted."

itly intend to abrogate the well established doctrine of inter-spousal tort immunity by including ambiguous or imprecise wording in the 1973 version of the wrongful death statute. We assume that statutes do not radically change the law unless the change is clearly expressed. See *Ferullo's Case*, 331 Mass. 635, 637 (1954); *Boston Lic. Bd.* v. *Boston*, 17 Mass. App. Ct. 10, 21 (1983).

Since the claim presented by the plaintiffs is not actionable, we refrain from attempting to resolve all the ambiguities and potentially unfair results which are possible under the language of G. L. c. 229, § 2; that is for the Legislature. Our decision is limited to deciding that the wrongful death statute does not, contrary to the common law, allow one spouse to recover from the estate of the other for loss of consortium.[7]

*Judgment affirmed.*

---

[7]The plaintiffs' arguments that the situation is somehow altered because the estate is the nominal plaintiff pursuant to the procedures outlined in G. L. c. 229, § 2, and the husband is not the actual defendant because of his death are groundless.